# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO.: _____

JAMES WOLFE, SONIA HERNANDEZ,
MIGUEL HERNANDEZ, ERIKA BRUCE,
SHIVON HARRIS, and SAMAD RAINEY,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.                                  **CLASS ACTION COMPLAINT**

CARNIVAL CORPORATION d/b/a           **JURY DEMAND**
CARNIVAL CRUISE LINES,
a foreign corporation,

      Defendant.

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs James Wolfe ("Wolfe"), Sonia Hernandez ("Mrs. Hernandez"), Miguel

Hernandez ("Mr. Hernandez"), Erika Bruce ("Bruce"), Shivon Harris ("Harris"), and Samad

Rainey ("Rainey") (collectively, "Plaintiffs") bring this action against Defendant Carnival

Corporation d/b/a Carnival Cruise Lines ("Carnival") on behalf of themselves and a putative class

of other similarly situated consumers who paid a concealed kickback to Carnival when they

purchased travel insurance policies through Carnival's so-called "Vacation Protection Package."

### INTRODUCTION

1.      Over the past few years, a number of states and insurance regulators have conducted

extensive investigations into the travel insurance industry, including its use of "distribution

participants" to solicit the purchase of travel insurance. These regulators have identified a number

of unfair and deceptive marketing and sales tactics used to sell "travel insurance," including the payment of undisclosed kick-backs to the "distribution participant" which are passed on to the consumer in the form of inflated premiums for the travel insurance product. These undisclosed kick-backs are further concealed by the distribution participant's practice of bundling the insurance product together with other, non-insurance products for a single price, while at the same time giving the impression that the insurance product is being purchased by the consumer on a pass-through basis from the insurer.

2.     As a result of the regulatory investigations into these practices, various insurance companies offering travel insurance products, including specifically Transamerica Casualty Insurance Company ("Transamerica") and Nationwide Mutual Insurance Company ("Nationwide"), have entered into multi-state regulatory settlement agreements agreeing to cease these unfair and deceptive practices.  However, none of these regulatory agreements have afforded relief directly to victimized consumers, nor have they prevented distribution participants, such as Carnival, from continuing to engage in these highly misleading – but lucrative – business practices.

3.     Very recently, Senator Edward J. Markey of Massachusetts released a report on his investigation into many of these unfair and deceptive practices in the context of the online travel insurance industry.[1] The criticisms voiced in Senator Markey's report include concerns that online travel insurance solicitations (1) offer only bare-bones travel insurance coverage with extensive exclusions; (2) utilize on online marketing process that encourages and pressure consumers to

---

[1] Flyer Beware: Is Travel Insurance Worth It?: Senator Markey releases new report that details questionable travel insurance marketing practices for policies that overpromise and under-deliver, (August 21, 2018), https://www.markey.senate.gov/news/press-releases/flyer-beware-is-travel-insurance-worth-it (last accessed August 24, 2018); Flyer Beware: Is Travel Insurance Worth It? (August 2018) https://www.markey.senate.gov/imo/media/doc/Flyer%20Beware%20Report.pdf (last accessed August 24, 2018).

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

purchase travel insurance policies; and (3) generate undisclosed fees that inflate the price of every travel insurance policy sold.

4.      As alleged in detail below, Carnival has engaged in precisely these unfair and deceptive practices on a nationwide basis from its headquarters in Miami, Florida, through its on-line marketing and selling of travel insurance policies in its "Vacation Protection Package" ("VPP").   The purpose of this action is: (1) to compensate Plaintiffs and other victimized consumers for Carnival's unfair and deceptive practices as a distribution participant in the sale of travel insurance, and (2) to put an end to Carnival's use of such unfair and deceptive sales practices.

5.      Specifically, Carnival's VPP includes the offer of a travel insurance policy ("Travel Insurance Policy"), issued (a) before December 1, 2017, by Transamerica or its affiliates ("the Transamerica Policy") and (b) after December 1, 2017 by Nationwide or its affiliates ("the Nationwide Policy"). Carnival's website clearly states that the Travel Insurance Policy is independently underwritten by Transamerica or later Nationwide and through a hyperlink ("See a summary of state-specific Vacation Protection Information"), and directs the consumer to a non-Carnival website (https://affinitytravelcert.com/) which bears the logo of Aon Affinity ("Aon"), the managing general agent for Transamerica and Nationwide.

6.      A reasonable consumer, like Plaintiffs, would thus believe that they are contracting directly with Transamerica or Nationwide for the purchase of the Travel Insurance Policy, and that the premium for that Travel Insurance Policy is passed through to Transamerica or Nationwide by Carnival from the price of the VPP.

7.      In reality, Carnival receives an undisclosed kickback from Transamerica, Nationwide or Aon, in the form of concealed commission for every Travel Insurance Policy sold

through its VPP.  Carnival unfairly and deceptively conceals the kickback and the fact that consumers are paying inflated prices for the Travel Insurance Policies to pay for that kickback.

8.     Plaintiffs accordingly seek relief for themselves and on behalf of a putative nationwide class of other similarly situated consumers who purchased a Travel Insurance Policy through Carnival's VPP ("the Class") under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–213.  Alternatively, Plaintiffs seek relief for a statewide subclasses under FDUTPA and under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., respectively. Finally, Plaintiffs also seek declaratory and injunctive relief to put an end to Carnival's unfair and deceptive kickback practices.

9.     Plaintiffs are not suing under any cruise ticket contract with Carnival; this action solely relates to Carnival's business practices concerning its omissions relating to independent sale of the Travel Insurance Policies and the remuneration Carnival receives as a distribution participant in that sale.

## PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff Wolfe is, and at all material times was, an individual who resides in and is a citizen of Greenville County, South Carolina. Wolfe is over the age of 18 and is *sui juris*. Wolfe purchased a Travel Insurance Policy through Carnival's VPP on or about August 15, 2015.

11.     Plaintiff Mrs. Hernandez is, and all material times was, an individual who resides in and is a citizen of Pinellas County, Florida. Mrs. Hernandez is over the age of 18 and is *sui juris*. Mrs. Hernandez purchased two Travel Insurance Policies through Carnival's VPP on or about May 17, 2016.

12.     Plaintiff Mr. Hernandez is, and all material times was, an individual who resides in and is a citizen of Pinellas County, Florida. Mr. Hernandez is over the age of 18 and is *sui juris*.

Mr. Hernandez purchased two Travel Insurance Policies through Carnival's VPP on or about May 17, 2016.

13.     Plaintiff Bruce is, and at all material times was, an individual who resides in and is a citizen of Miami-Dade County, Florida. Bruce is over the age of 18 and is *sui juris*. Bruce purchased a Travel Insurance Policy through Carnival's VPP on or about December 17, 2017.

14.     Plaintiff Harris is, and at all material times was, an individual who resides in and is a citizen of Middlesex County, New Jersey. Harris is over the age of 18 and is *sui juris*. Harris purchased a Travel Insurance Policy through Carnival's VPP on or about February 2, 2018.

15.     Plaintiff Rainey is, and at all material times was, an individual who resides in and is a citizen of Middlesex County, New Jersey.  Rainey is over the age of 18 and is *sui juris*. Rainey purchased a Travel Insurance Policy through Carnival's VPP on or about February 2, 2018.

16.     Defendant Carnival, is a corporation and citizen of Florida, with its self-proclaimed "world headquarters" and principal place of business located 3655 NW 87th Avenue. Miami, FL. 33178. Carnival does business regularly throughout the United States, including and from within the state of Florida.

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is an action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than the defendant.

18.     This Court has personal jurisdiction over Carnival because it continuously and systematically operates, conducts, engages in, and carries on business in Florida. Upon information and belief, Carnival's United States business operations (including specifically its functioning as a distribution participant for travel insurance) are controlled, directed, and for the most part carried out in Miami, Florida.

19.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because Carnival resides in this district for purposes of the statute.

20.     Carnival is subject to the personal jurisdiction of this Court for purposes of this action.

## COMMON ALLEGATIONS

21.     Carnival operates 25 ships which sail 1,500 voyages annually, calling on ports from Cozumel to Ketchikan.[2] The fleet's largest ship, *Vista*, can accommodate 3,900 guests.[3] In 2018, Carnival was estimated to hold an 8.9% share of cruise industry revenue (or $4,167,000,000.00) and 22.0% of passengers (or 5,716,500).[4]

22.     When a consumer visits Carnival's website, http://www.carnival.com, the site allows the consumer to select her preferred destination and travel dates.

23.     At all material times, before completing their cruise purchases Carnival's website prompts customers to elect whether to purchase the VPP, which necessarily includes a Travel Insurance Policy. A copy of the VPP along with specimens of the Transamerica Policy and the Nationwide Policy are attached as Composite Exhibit A.

24.     The Transamerica Policy and the Nationwide Policy each offer extremely limited coverage, operating as little more than an excess policy that pays <u>secondary</u> to "Other Valid and Collectible Group Insurance" or "indemnity." *See* Composite Exhibit A.

---

[2] http://phx.corporate-ir.net/phoenix.zhtml?c=200767&p=irol-funfacts (last accessed August 24, 2018).

[3] *Id.*

[4] https://www.cruisemarketwatch.com/market-share/ (last accessed August 24, 2018).

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

25. Carnival marketed the VPP and the Travel Insurance Policies to its customers in a uniform fashion, such that when purchasing travel insurance the customer is exposed to the same marketing language soliciting the sale of the Travel Insurance Policy.

26. In making the Travel Insurance Policy available to customers on its website through the VPP, Carnival does not hold itself out as the seller or issuer of the Travel Insurance Policy. Carnival simply facilitates the sale of the Travel Insurance Policy as a distribution participant, by including it in the VPP.

27. At the same time Carnival marketed the VPP to its customers, however, it was receiving a kickback in the form of an undisclosed, unearned commission on the sale of the Travel Insurance Policies. Carnival deliberately omitted any disclosure of the kickback to Plaintiffs and the other members of the Class. Carnival's marketing practices were and are deceptive and unfair.

28. Carnival furthermore uses the VPP to further conceal its undisclosed profits in the sale of the Transamerica Policies and Nationwide Policies, by bundling the insurance and non-insurance products into a single price package. Specifically, the VPP is an amalgamation of three separate products offered for sale by three separate entities:

- The Cancellation Fee Waiver Program, <u>a non-insurance product</u> <u>provided by Carnival</u>. If a purchaser canceled her cruise for a covered reason, Carnival would waive its cancellation fee and refund the unused portion of the cruise.

- The Travel Insurance Policy <u>an insurance product</u> <u>provided by Transamerica or Nationwide</u>.

- The Carefree Worldwide Emergency Assistance Program, <u>a non-insurance product provided by On Call International</u>.

29. Although the VPP was and is sold for one consolidated price, it was and is marketed as being comprised of three separate products, only one of which was provided by Carnival, while the other two were provided by two different entities. Therefore, a reasonable consumer was misled

into believing that the price she pays for the VPP is comprised of three "pass-through" charges, which Carnival simply collects and passes-through to each respective provider: a charge from Carnival for the Cancellation Fee Waiver, a pass-through charge from Transamerica or Nationwide for the Travel Insurance Policy, and a pass-through charge from On Call International for the Travel Assistance Program.

30.     By bundling the Travel Insurance Policy into the VPP, Carnival is able to further conceal the fact that consumers were being vastly overcharged for the Travel Insurance Policy due to the kickbacks Carnival received for every Transamerica Insurance Policy sold through its VPP.

31.     At all material times, Carnival aggressively marketed the VPP to its customers while concealing its profit interest in the sale of the Travel Insurance Policy. These marketing practices were deceptive and unfair.

32.     For example, at all material times, before a customer can purchase a cruise ticket, Carnival's website required customers to make an election to purchase the VPP (including the Travel Insurance Policy) in a completely separate transaction. Upon information and belief, until December 2017, if the customer refused to make an election regarding the VPP, then she could not proceed with purchasing her cruise ticket. The customer was forced to check either a "yes" or "no" box regarding purchase of the VPP. The "yes" option was highlighted in bold type and placed above the box for "no," which did not appear in bold type. The customer could not simply ignore the offering and proceed to her ticket purchase transaction.

33.     Upon information and belief, since December 2017, Carnival's website still appears to require customers to make this election. Carnival's website allows the customer to proceed with purchasing her cruise ticket without making an election, but the apparently "mandatory" choice still appears to the customer on Carnival's website just as it did before December 2017, with the

"yes" option highlighted in bold type and placed above the box for "no," which does not appear in bold type.

34.     Despite aggressively marketing the VPP on its website, Carnival has never disclosed that it receives a profit based on the sale of the Travel Insurance Policy. Indeed, in its VPP marketing materials, Carnival differentiated that while the Cancellation Fee Waiver Program is "provided by Carnival Cruise Lines," the Travel Insurance Policy is underwritten by Transamerica or Nationwide, without more.

35.     Through these misleading marketing materials, objective consumers would reasonably infer that when they purchased a VPP, the funds to cover the Travel Insurance Policy's cost were transmitted to Transamerica, who Carnival identified as the company offering the Transamerica Policy for sale to the customer, or to Nationwide, who Carnival identifies as the company offering the Nationwide Policy for sale to the customer.

36.     In reality, and completely unbeknownst to the consumer, the price charged for the Transamerica Policy was inflated because, in addition to charging the premium for the Transamerica Policy, Carnival charged and received the undisclosed, unearned commission from Transamerica in exchange for making Transamerica the exclusive travel insurance provider for the VPP. By selling the Transamerica Policy through the VPP, Carnival created for itself a massive hidden profit-center. Carnival continues these unfair and deceptive practices by selling the Nationwide Policy through the VPP.

37.     In short, Carnival has, through omission, engaged in a pattern of unlawful profiteering, deceit, and self-dealing with regard to the Travel Insurance Policies.

38.     Recently, travel insurers around the country, including both Transamerica and Nationwide, have entered into multi-state regulatory settlement agreements regarding their unfair

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

and deceptive practices in the marketing of travel insurance. Attached as Composite Exhibit B are copies of the multi-state regulatory agreements Transamerica entered into on December 15, 2017 and Nationwide entered into on January 3, 2018.

39.     A condition of Transamerica's multi-state regulatory agreement required Transamerica to underline exit the travel insurance industry entirely for five years as a result of the unfair and deceptive business practices Transamerica employed and allowed its distribution partners, such as Carnival, to employ.

40.     Under the regulatory settlements, the unfair and deceptive practices travel insurers have agreed will no longer be used include:

- combining and packaging the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance in its rate filings and in the sale of Travel Insurance to consumers;
- allowing Distribution Participants to combine and package the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance when offering these products and services for sale; and
- charging a separate fee for travel insurance in addition to the travel insurance premium or add any charges or fees for any of the travel insurance products or related services without a separate written agreement with the insured.

*See* Composite Exhibit B.

41.     Throughout the Class Period, Carnival engaged in these practices in the marketing and sale of the Travel Insurance Policy through Carnival's VPP. Since Nationwide and Transamerica entered into these multi-state regulatory agreements, Carnival has in some instances modified its website's functionality and marketing materials to attempt to conform to their requirements. Discovery will reveal the timing of these changes and past versions of Carnival's

website that utilized highly deceptive and unfair tactics to mislead consumers into purchasing the Travel Insurance Policy so that Carnival could unfairly profit at consumers' expense.

42.     Although Transamerica has exited the travel insurance industry as of December 31, 2017, since then Carnival has offered the Nationwide Policy in its VPPs, still utilizes the deceptive and unfair marketing and sales practices outlined in this Complaint, and is still receiving substantial kickbacks for every Travel Insurance Policy sold through its VPP.

43.     Carnival has never disclosed to Plaintiff, or any of the class members, the true nature of its relationship with Transamerica or Nationwide. Specifically, Carnival never disclosed the fact that it received a substantial kickback on the Transamerica Policy that Carnival offered for sale with the VPP. Nor has Carnival ever disclosed that it is still receiving substantial kickbacks on every Travel Insurance Policy it sells.

44.     The VPP (and certainly the Travel Insurance Policies) would have been offered to Plaintiffs at a lower price but for the kickbacks paid to Carnival.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### i.   **James Wolfe**

45.     On or about August 15, 2015, Wolfe purchased a Carnival VPP containing the Transamerica Policy for $147.00, online through Carnival's website. *See* Exhibit C.

46.     On the date that Wolfe purchased the VPP, he did not know about Carnival's kickback scheme. Wolfe would not have purchased the VPP had he known that the price of the VPP or Travel Insurance Policy was inflated because of the kickback from Transamerica or Aon to Carnival in exchange for placement as the exclusive travel insurance provider for Carnival. Instead, Wolfe would have purchased a stand-alone insurance policy from another insurer, or self-insured.

47.     The VPP (and certainly the Transamerica Policy) would have been offered at a lower price but for the kickback to Carnival.

48.     As a consequence of purchasing the Transamerica Policy, Wolfe lost money in the form of the overcharge paid as a result of the kickback to Carnival.

**ii.     Sonia and Miguel Hernandez**

49.     On or about May 17, 2016, Mr. and Mrs. Hernandez purchased two Carnival VPPs containing the Transamerica Policy, one for $158.00 and the other for $207.00, online through Carnival's website. *See* Composite Exhibit D.

50.     On the date that Mr. and Mrs. Hernandez purchased the VPP, they did not know about Carnival's kickback scheme. Mr. and Mrs. Hernandez would not have purchased the VPP had they known that its price was inflated because of the kickback from Transamerica to Carnival in exchange for placement as the exclusive travel insurance provider for Carnival. Instead, Mr. and Mrs. Hernandez would have purchased a stand-alone insurance policy from another insurer, or self-insured.

51.     The VPP (and certainly the Transamerica Policy) would have been offered at a lower price but for the kickback to Carnival.

52.     As a consequence of purchasing the Transamerica Policy, Mr. and Mrs. Hernandez lost money in the form of an overcharge paid as a result of the kickback to Carnival.

**iii.     Erika Bruce**

53.     On or about December 17, 2017, Bruce purchased a Carnival VPP containing the Nationwide Policy for $218.00, online through Carnival's website. *See* Exhibit E.

54.     On the date that Bruce purchased the VPP, she did not know about Carnival's kickback scheme. Bruce would not have purchased the VPP had she known that the price of the

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

VPP or Travel Insurance Policy was inflated because of the kickback from Nationwide or Aon to Carnival in exchange for placement as the exclusive travel insurance provider for Carnival. Instead, Bruce would have purchased a stand-alone insurance policy from another insurer, or self-insured.

55.     The VPP (and certainly the Nationwide Policy) would have been offered at a lower price but for the kickback to Carnival.

56.     As a consequence of purchasing the Nationwide Policy, Bruce lost money in the form of the overcharge paid as a result of the kickback to Carnival.

**iv.    Shivon Harris and Samad Rainey**

57.     On or about February 5, 2018, Harris and Rainey purchased a Carnival VPP containing the Nationwide Policy for $190.00, online through Carnival's website. *See* Exhibit F.

58.     On the date that Harris and Rainey purchased the VPP, they did not know about Carnival's kickback scheme. Harris and Rainey would not have purchased the VPP had they known that its price was inflated because of the kickback from Nationwide or Aon to Carnival in exchange for placement as the exclusive travel insurance provider for Carnival. Instead, Harris and Rainey would have purchased a stand-alone insurance policy from another insurer, or self-insured.

59.     The VPP (and certainly the Transamerica Policy) would have been offered at a lower price but for the kickback to Carnival.

60.     As a consequence of purchasing the Nationwide Policy, Harris and Rainey lost money in the form of the overcharge paid as a result of the kickback to Carnival.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this Complaint as a class action pursuant to Federal Rule of Civil Procedure 23.

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

### A. <u>Class Definitions</u>

62.     Plaintiffs bring this action against Carnival on behalf of themselves and all other

persons similarly situated. Plaintiffs seek to represent the following nationwide class:

> All persons who, within the applicable limitations period, purchased a
> Travel Insurance Policy through Carnival's Vacation Protection Plan.
> Excluded from this class are Carnival, its affiliates, subsidiaries, agents,
> board members, directors, officers, and/or employees ("the Class").

63.     Alternatively, Plaintiffs seek the certification of the following subclasses for

residents of the states of Florida and New Jersey:

**i.     <u>Florida subclass:</u>**

> All Florida persons who, within the applicable limitations period,
> purchased a Travel Insurance Policy through Carnival's Vacation
> Protection Plan. Excluded from this class are Carnival, its affiliates,
> subsidiaries, agents, board members, directors, officers, and/or
> employees.

**ii.     <u>New Jersey subclass:</u>**

> All New Jersey persons who, within the applicable limitations period,
> purchased a Travel Insurance Policy through Carnival's Vacation
> Protection Plan. Excluded from this class are Carnival, its affiliates,
> subsidiaries, agents, board members, directors, officers, and/or
> employees.

64.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class

before or after the Court determines whether such certification is appropriate. In particular,

Plaintiffs may amend the complaint to join in additional consumers from other states in order to

seek the certification of additional statewide classes or subclasses.

65.     Carnival has subjected Plaintiffs and the members of the Class to the same unfair,

unlawful, and deceptive practices and harmed them in the same manner. The conduct described

above was Carnival's standardized and uniform business practice.

### B.  Numerosity

66.     The individual class members are so numerous that joinder of all members in a single action is impracticable. Carnival operates 1,500 cruises a year, and upon information and belief, it has sold thousands of Travel Insurance Policies during the Class Period.

67.     The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Carnival. The precise number of Class members number at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

### C.  Commonality/Predominance

68.     Common questions of law and fact exist as to Plaintiffs' and the Class members' claims. These common questions predominate over any questions solely affecting individual Class members, including, but not limited to, the following:

   a.  Whether Carnival engaged in a deceptive and unfair business practice by omitting disclosure of its financial interest in offering and selling the Travel Insurance Policies;

   b.  Whether Carnival further concealed the omission by bundling the insurance and non-insurance products to lead the reasonable consumer to believe it was a pass-through charge for the Travel Insurance Policies;

   c.  Whether Carnival received undisclosed kickbacks, commissions, or fees from the sale of the Travel Insurance Policies;

   d.  Whether and to what extent Carnival's conduct has caused injury to the Plaintiffs and the other members of the Class;

   e.  Whether and to what extent Carnival's unfair and deceptive practices are ongoing such that declaratory and/or injunctive relief are warranted.

### D.  Typicality

69.     Plaintiffs are members of the Class they seek to represent. Plaintiffs' claims are typical of the respective Class claims because of the similarity, uniformity, and common purpose of Carnival's challenged misconduct conduct. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Carnival's challenged practices.

### E.  Adequacy of Representation

70.     Plaintiffs are adequate representatives of the Class they seek to represent and will fairly and adequately protect the interests of the Class members. Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel, highly experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and the unnamed Class members. Plaintiffs anticipate no difficulty in the management of this litigation as a Class action.

71.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

### F.  Requirements of Fed. R. Civ. P. 23(b)(3)

72.     The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiffs and the unnamed Class members are based on the common marketing and sales practices Carnival utilized in its sale of the Travel Insurance Policies to Plaintiffs and the unnamed Class members.

73.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

74.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is in the case at bar, common questions will be held to predominate over individual questions.

### G.   **Superiority**

75.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

    a.   Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the country;

    b.   Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

    c.   There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

    d.   The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

    e.   Individual suits would not be cost effective or economically maintainable as individual actions; and

    f.   The action is manageable as a class action.

### H.   **Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

76.     Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

77.     Carnival has acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

<u>COUNT I</u>

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

**(Alleged on behalf of the Class, or alternatively a Florida Subclass)**

78.    Plaintiffs re-allege paragraphs 1 through 77 as if fully set forth herein and further allege the following.

79.    This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

80.    FDUTPA, section 501.201, *et seq.*, Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

81.    At all material times, Plaintiffs and all members of the Class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

82.    At all times material, Carnival conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

83.    Carnival's conduct of utilizing deceptive and unfair marketing and sales practices and charging inflated amounts for the Travel Insurance Policies to Plaintiffs and the other members of the Class violates FDUTPA.  Carnival's challenged conduct was conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA by defendants operating from within the State.

84.    Carnival is not a bank or savings and loan association regulated by the Florida Office of Financial Regulation of the Financial Services Commission. Further, it is not a bank or savings and loan association regulated by federal agencies.

85.     At all material times, Carnival engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices:

a.  Taking kickbacks, in the form of, among other things, unearned and undisclosed commissions from the sales of the Travel Insurance Policies in exchange for making Transamerica (before December 1, 2017) and/or Nationwide (from December 1, 2017 on) the exclusive travel insurance provider for the VPP, and therefore charging an inflated price for the cost of the Travel Insurance Policies.

b.  Bundling the Travel Insurance Policies with non-insurance products into the VPP and charging a single price for the VPP, so consumers did not know what amounts they were paying for each of the three bundled products/services; and

c.  Presenting the VPP to create the impression that it was comprised of three pass-through charges: (1) the cost of the Cancellation Fee Waiver, (2) the cost of the Travel Insurance Policy, and (3) the cost of Travel Assistance, even though Carnival took an unearned, undisclosed commission from the inflated price of the Travel Insurance Policy.

86.     The concealment and omissions of material facts and deceptions alleged in the foregoing paragraphs occurred in connection with Carnival's trade and commerce in Florida.

87.     Plaintiffs and the other members of the Class have sustained actual damages in the form of Carnival's kickback as a direct and proximate result of Carnival's unfair and unconscionable practices. Section 501.211(2), Florida Statutes, provides Plaintiff and the other members of the Class a private right of action against Carnival and entitles them to recover their actual damages, plus attorneys' fees and costs.

88.     Carnival still utilizes many of the deceptive acts and practices described above and is still collecting a significant unearned commission from every Travel Insurance Policy sold. Plaintiffs and the other members of the Class have suffered and will continue to suffer irreparable harm if Carnival continues to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiffs and the Class to obtain declaratory and injunctive relief to put an end to Carnival's unfair and deceptive scheme.

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class, demand judgment against Carnival for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT II

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (Alleged alternatively on behalf of a New Jersey Subclass)

89.     Plaintiffs Harris and Rainey re-allege paragraphs 1 through 77 as if fully set forth herein and further allege the following.

90.     The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*., prohibits the "use or employment by any person of unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2.

91.     At all material times, Carnival engaged in, and continues to engage in, unconscionable commercial practices, deceptive acts, unlawful schemes and misrepresentations in the conduct of its trade and/or commerce in the State of New Jersey, through one or more of the following unfair and deceptive acts and practices:

> a.    Taking kickbacks, in the form of, among other things, unearned and undisclosed commissions from the sales of the Travel Insurance Policies in exchange for making Transamerica (before December 1, 2017) and/or Nationwide (from December 1, 2017 on) the exclusive travel insurance provider for the VPP, and therefore charging an inflated price for the cost of the Travel Insurance Policies.

> b.    Bundling the Travel Insurance Policies with non-insurance products into the VPP and charging a single price for the VPP, so consumers did not know

what amounts they were paying for each of the three bundled products/services; and

    c.   Presenting the VPP to create the impression that it was comprised of three pass-through charges: (1) the cost of the Cancellation Fee Waiver, (2) the cost of the Travel Insurance Policy, and (3) the cost of Travel Assistance, even though Carnival took an unearned, undisclosed commission from the inflated price of the Travel Insurance Policy.

92.    The concealment and omissions of material facts and misrepresentations and deceptions alleged in the preceding paragraphs occurred in connection with Carnival's trade and commerce in New Jersey.

93.    The NJCFA provides that "[a]ny person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person any method, act, or practice declared unlawful under the [NJCFA] may bring an action or assert a counterclaim therefore in any court of competent jurisdiction." N.J.S.A. 56:9-19.

94.    Plaintiffs Harris and Rainey and the New Jersey Subclass are "person(s)" as that term is defined in N.J.S.A. 56:8-1(d).

95.    Plaintiffs Harris and Rainey and the New Jersey Subclass have sustained actual damages in the form of Carnival's kickback as a direct and proximate result of Carnival's unfair and unconscionable practices. Plaintiffs Harris and Rainey and the New Jersey Subclass have a private right of action against Carnival and are entitled to recover, in addition to their actual damages, a threefold award of damages sustained by any person, interest, plus attorneys' fees and costs. N.J.S.A. 56:8-19.

96.    Carnival still utilizes many of the deceptive acts and practices described above and is still collecting a significant unearned commission from every Travel Insurance Policy it sells. Plaintiffs Harris and Rainey and the New Jersey Subclass have suffered and will continue to suffer

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

irreparable harm if Carnival continues to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated New Jersey Subclass members, demand an award against Carnival in the amounts by which it has been unjustly enriched at Plaintiffs' and the Subclass Members' expense, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiffs accordingly respectfully request that the Court enter its Orders and Judgment:

a. Certifying this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3), *Federal Rules of Civil Procedure*, and appointing Plaintiffs as representatives of the Class(es), and appointing undersigned counsel as Class Counsel;

b. Enjoining Carnival from continuing the acts and practices challenged by the Plaintiffs, including an order requiring Carnival to make full disclosure to consumers of its retention of Travel Insurance Policy premiums sold through the VPP and the amount of the kickback it receives;

c. Awarding Plaintiff and the Classes damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA;

d. Finding that Carnival has been unjustly enriched and requiring it to make restitution of all unjust benefits paid by Plaintiff and Class members, together with pre-judgment interest;

e. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

f. Awarding Plaintiff and Class members costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class Counsel and experts, and reimbursement of expenses;

g. Awarding such other relief as the Court deems just, equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

Dated: August 24, 2018.

Respectfully submitted,

By: */s/ Adam Moskowitz__*

Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423


Andrew S. Friedman
(*to be admitted Pro Hac Vice*)
afriedman@bffb.com
Francis J. Balint, Jr.
(*to be admitted Pro Hac Vice*)
fbalint@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN &**
**BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Tel: (602) 274-1100
Fax: (602) 274-1199

Kimberly Lambert Adams
Florida Bar No. 14479
kadams@levinlaw.com
**LEVIN,      PAPANTONIO,      THOMAS,**
**MITCHELL,   RAFFERTY,   PROCTOR,**
**P.A.**
316 South Baylen St.
Pensacola, FL 32502
Tel: (850) 435-7056
Fax: (850) 436-7056

*James Wolfe, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines*
*Class Action Complaint*

William F. "Chip" Merlin, Jr.
Florida Bar No. 364721
cmerlin@MerlinLawGroup.com
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692